Nov. Term,
1859.

WILLIAMS
v.
CONNELLY.

WILLIAMS and Others *v.* CONNELLY and Others.

CONNELLY. The first general election for city officers in the incorporated cities of *Indiana*,
was to be held, under the amendatory act of 1859, on the first *Tuesday* in
*May* of that year.

*Saturday,
December* 17.

APPEAL from the *Tippecanoe* Circuit Court.

*Per Curiam.*—This was a complaint by *John S. Williams, George Ulrich,* and *Robert C. Gregory,* against *John Connelly, William Taylor,* and *Christian Embee.* The facts were agreed on by the parties, and are these:

The city of *Lafayette* was incorporated under an act approved *March* 9, 1857, and the first election, after it was incorporated, was held, in that city, on the first *Tuesday* of *May,* in that year, when there was elected, a mayor, two councilmen from each ward, a treasurer, city clerk, marshal, assessor, engineer, and street commissioner. At that election, the said *John S. Williams* was elected mayor, who, within the time prescribed by law, took the proper oath of office, entered upon the duties, &c., and served as mayor, the full term of two years. At the first meeting of the city council after the election, it was determined by lot, which councilman, in each ward, should hold his office one year, and, in like manner, which councilman should hold his office two years. The second general election, in and for the city, under the act of 1857, was held on the first *Tuesday* of *May,* 1858, at which there was elected one councilman from each ward, a city clerk, treasurer, marshal, assessor, engineer, and street commissioner; and at which one *William S. Ward* was elected a councilman from the fifth ward, who having taken the requisite oath, entered upon his duties as councilman. And at the same election, the said *George Ulrich* was duly elected treasurer, who took the oath of office, gave the required bond, and has continued to serve as treasurer for the full term of one year. On the 1st of *March,* 1859, an act, amending the act of 1857, was passed, and, on that day, approved. After this amendatory act took effect, and was

in force, the common council of said city ordered that, at the general election, on the first *Tuesday* of *May*, 1859, there should be elected, for the city, a mayor, two councilmen from each ward, a treasurer, marshal, city clerk, assessor, engineer, and street commissioner. At the election thus ordered, *John Connelly* was elected mayor, *William Taylor*, treasurer, and *Christian Embee*, a councilman from the fifth ward (with one *Owen Ball*, who was elected his own successor, the said *Embee* having been elected in the place of the said *William S. Ward*). *Connelly*, *Taylor*, and *Embee* have taken the necessary official oaths, &c., and are ready to enter upon the duties of the respective offices to which they have been elected, if they are authorized to do so by the act of 1859, under which they were elected.

Upon the above statement of facts, the case was submitted to the Court, and, on final hearing, it was adjudged that a writ of prohibition issue against *Taylor* and *Embee*, commanding them to refrain and desist from entering upon the respective offices severally claimed by them, and that the suit as to *Connelly*, be dismissed, &c.

*Williams*, *Taylor*, and *Embee* each moved for a new trial; but their motions were overruled.

Whether the decision of the Circuit Court is, or is not, correct, depends upon the construction to be given to the statutory enactments referred to in the statement of facts. The first section of the act of *March*, 1857, repealed all general laws then in force for the incorporation of cities. The second, third, fourth, fifth, sixth, and seventh sections relate to the manner in which towns may change their organization and become cities. The eighth provides that the trustees of such town, the steps necessary to effectuate the proposed change of organization having been taken, "shall divide the city into wards, and give notice that an election will be held, on a day and at the places therein named, for the election of city officers." The ninth section is as follows: "The officers of a city shall consist of a mayor, two councilmen from each ward, a city clerk,

treasurer, marshal, assessor, engineer, and street commissioner. All such officers, elected at any special election, shall hold their offices until the next general election, on the first *Tuesday* in *May*, and until their successors shall be elected and qualified. After said first general election, said officers shall respectively hold their offices as follows, to-wit: the mayor, two years, the clerk, treasurer, assessor, marshal, and street commissioner, one year each, and the councilmen shall be chosen by the legal voters of their respective wards, and one councilman from each ward, to be determined by lot, at the first regular meeting after their election, shall hold his office one year, and the other, to be determined in like manner, shall hold his office two years; and annually thereafter, one councilman shall be elected by the legal voters of each ward; and all of said officers shall hold their respective offices, during their respective terms, and until their successors are elected and qualified."

Thus, it will be seen that the term for which *Williams* was elected mayor, as also the term for which *Ulrich* was elected treasurer, expired on the first *Tuesday* of *May*, 1859; and that the councilman elected on the first *Tuesday* of *May*, 1858, is entitled to hold until the first *Tuesday* of *May*, 1860, unless the respective terms of the two former have been extended, and the term of the latter shortened, by the act of *March* 1, 1859. By that act, § 9, above quoted, was amended so as to read thus: "The officers of said city shall consist of a mayor, two councilmen from each ward, a city clerk, treasurer, assessor, engineer, marshal, and street commissioner. All such officers, elected at any special election, shall hold their offices until the next general election, on the first *Tuesday* in *May*, and until their successors shall be elected and qualified. After the first general election, said officers shall respectively hold their offices for two years each. The councilmen shall be chosen by the legal voters of their respective wards; and one councilman from each ward, to be determined by lot at the first regular meeting after the election, shall hold his office for two years, and the other, to be determined in like man-

ner, shall hold his office four years, and biennially there- after, one councilman shall be elected by the legal voters of each ward."

The purpose of these amendments is to change the terms of councilmen from one and two, to two and four, years, and to make the terms of all the other officers, two years each. When were these changes to take place? This is the only question to settle.

The act, as amended, took effect *March* 3, 1859. When it was passed, there was a law in force providing for general annual elections on the first *Tuesday* of *May*, in each year. That law was not repealed by the amendatory act, and is still in force, consequently, the first general election, after the amending act took effect, was to be held on the first *Tuesday* of *May*, 1859.

We are of opinion that the amendatory act was intended to apply as well to cities already organized, as to cities to be thereafter organized, and that properly construed, it provides that two councilmen from each ward, and all other city officers, should be elected on the first *Tuesday* of *May*, 1859, that being the day on which the first general election, after the act took effect, was, by law, to be held.

It follows, the judgment of the Circuit Court, so far as it directs "a writ of prohibition to issue against *Taylor* and *Embee*," be reversed—and the judgment as to *Connelly*, be affirmed.

The judgment against *Taylor* and *Embee*, is reversed. The judgment in favor of *Connelly*, is affirmed. Costs against *Gregory*, *Ulrich*, and *Williams*.

*J. S. Williams*, for the appellants.

*R. C.* and *J. Gregory*, for the appellees.